2001 SD 55

**CITY OF ABERDEEN, Plaintiff and Appellant,**

v.

**Timothy RICH, Thomas Tobin, Roger Huff, Huff Development Corporation, a South Dakota Corporation, and Sea Corporation, a South Dakota Corporation, Defendants and Appellees.**

Nos. 21385, 21397, 21413.

Supreme Court of South Dakota.

Argued Oct. 23, 2000.

Decided May 2, 2001.

Mark V. Meierhenry and Robin Jacobson Houwman of Danforth, Meierhenry & Meierhenry, Sioux Falls, SD, Attorneys for plaintiff and appellant City of Aberdeen.

Rollyn Samp of Samp Law Offices, Sioux Falls, SD, Attorneys for defendant and appellee Timothy Rich.

Thomas Tobin of Tonner, Tobin & King, Aberdeen, SD, Pro se for defendant and appellee Huff Development, Inc.

Mark Barnett, Attorney General, Jeffrey P. Hallem, Assistant Attorney General, Pierre, SD, Attorneys for State of South Dakota as amicus curiae.

TUCKER, Circuit Judge.

[¶ 1.] The City of Aberdeen (City) brought this declaratory judgement action against defendants to determine if two separate land transactions with City should be declared null and void due to an interest in the transactions by the city mayor in violation of SDCL 6–1–1. SDCL 6–1–1 provides in pertinent part:

> It shall be unlawful for any officer of a county, municipality, township or school district who has been elected or appointed, to be interested, . . . in any contract entered into by said county, municipality, township or school district . . . in the purchase of any real or personal property belonging to the county, municipality, township or school district. . . . Such contract shall be null and void from the beginning.

The circuit court found no statutory violation in the first transaction and a violation of the statute in the second transaction. Both sides appeal.

FACTS

[¶ 2.] This case involves two land transactions between City and Mayor Tim Rich, City Attorney Tom Tobin, Roger Huff, Huff Development, Inc., and SEA, Inc. During all times relevant to this action, Rich was the mayor of Aberdeen and Tobin was the city attorney of Aberdeen.

[¶ 3.] The first transaction involved land in the Mel–Ros addition of the City of Aberdeen. On June 28, 1991, the property was officially offered for sale by City. The required notices were published. On February 3, 1992, city council approved the sale of the city land to Huff Construction. Mayor Rich abstained from that vote. At the city council meeting the Mayor said:

> I have been talked to about investing in it. I am not invested in it at this time, but I will abstain because I do not want any conflict of interest at this particular time. So at this time with that knowledge, I would like the Secretary to take roll.

Huff delivered a check to City on February 3, 1992, on the account of Huff Construction. The check was not deposited by the City finance department until March 10, 1992.

[¶ 4.] On February 4, 1992, Huff and Mayor Rich called City Attorney Tobin to form a corporation involved in financing

spec homes and they wanted to sign it that day. Tobin testified that sometime later he was informed that they were going to transfer the land from Huff to the corporation. Huff and Rich were equal owners of Huff Development. On February 5, 1992, Mayor Rich also signed a plat for the land in question. Mayor Rich signed the plat as a Secretary of the owner, Huff Development, Inc.

[¶ 5.] On March 9, 1992, Mayor Rich signed a warranty deed transferring the city-owned real estate to Huff. City Attorney Tobin prepared the deed. Huff, however, had already executed a warranty deed which transferred any interest he had in the same land to Huff Development, Inc., on March 5, 1992, four days prior to receiving the deed for the property from City. City Attorney Tobin knew at the time he drafted the deed from Huff to Huff Development that the Mayor was a 50% owner of the entity to which the land was being transferred.

[¶ 6.] The second transaction involved a trade and sale of land between SEA, Inc. and City. SEA proposed a sale/trade of land between City and SEA. Prior to the transfer, two appraisals were made of the properties in question. Wallace E. Nelson completed the first appraisal on November 11, 1994. Nelson valued City's property at $17,160 and the property owned by SEA at $8,200, a difference of $8,960. City paid for Nelson's appraisal. The value for both parcels was based on comparable sales. Mayor Rich was unhappy with the first appraisal and ordered the city planning and zoning director to obtain a second appraisal because the first appraisal was too high. The city finance director confirmed that the Mayor felt the appraisal was quite high and wanted another appraisal. D.L. Mohr completed a second appraisal on February 15, 1995. Mohr's appraisal found that there was a difference

of only $2,060 between the values of the land.

[¶ 7.] In March 1995, Mayor Rich attended the Site Planning Board meeting to discuss the proposed sale/trade of land. The Mayor testified that he was at the meeting as Mayor and as a representative of SEA. He felt that, based on his knowledge of the transaction, that the sale/trade made sense for City and all parties to it. Only the Mohr appraisal was shown to the Site Planning Board. The Board was not informed of the other appraisal.

[¶ 8.] On May 30, 1995, City approved the trade of land with an additional payment of $817 by SEA to City. The Mayor said at the city council meeting, "I must disclose that I am involved in these transactions as is the City Attorney." City Council approved this transaction on May 30, 1995, with Mayor Rich abstaining. On May 30, 1995, Mayor Rich, in his capacity of mayor, quitclaimed the City land to SEA. On May 30, 1995, SEA quitclaimed its property to City in addition to a payment of $817. At the time of the transfer, SEA had four equal stockholders, Mayor Rich, City Attorney Tobin, Huff, and City Engineer Francis Brink.

[¶ 9.] On that same date, SEA sold seven lots of the newly purchased/traded land for $77,000. City Attorney Tobin drew all the deeds involved in this case relevant to both transactions.

[¶ 10.] On May 28, 1998, the South Dakota Department of Legislative Audit prepared a special report questioning the propriety of these land transactions. City commenced this action against Mayor Rich, City Attorney Tobin, Huff, Huff Development Corporation, and SEA in July 1998 seeking to void both transactions and, if the transactions are voided, requesting "that the Court take evidence and make its determination as to what remedies, if any, the City of Aberdeen has available and to

determine the rights of other persons and the title in the real estate involved in the questioned land transactions."

### ANALYSIS AND DECISION

#### First Transaction
#### ISSUE ONE

**[¶ 11.] Did City commence this action within the applicable statute of limitations?**

[¶ 12.] The trial court found that at the time of the vote to accept the bid in the first transaction, Mayor Rich did not have an interest in the contract. The trial court also found that the relevant statute of limitations had expired by the time City brought the action regarding the first transaction. The city council vote approving the purchase occurred on February 3, 1992, and the deed was delivered on March 9, 1992. This action was filed on July 30, 1998. The trial judge held that the six year statute of limitations found in SDCL 15–2–13 applied to this transaction. The court ruled that the statute of limitations had expired and that City had failed to establish that fraud was present to toll the statute of limitations.

[¶ 13.] City argues first that SDCL 15–3–6 provides the statute of limitations relevant to this action. SDCL 15–3–6 states:

> When grants of real property shall have been issued or made by the state, and the same shall be declared void by the determination of a competent court, rendered upon an allegation of a fraudulent suggestion, or concealment, or forfeiture, or mistake, or ignorance of a material fact, or wrongful detaining, or defective title, an action for the recovery of the premises so conveyed may be brought either by the state or by any subsequent grantee of the same premises, his heirs or assigns, within twenty

years after such determination was made, but not after that period.

[¶ 14.] This statute provides a twenty year period in which to recover real property granted by the State where the transaction has been declared void. However, in this case City, not the State of South Dakota, is pursuing this action. There is no grant from the State of South Dakota being contested here. Therefore, the twenty year statute of limitations in SDCL 15–3–6 is not applicable.

[¶ 15.] Next, City asserts that SDCL 6–1–4 contains an appropriate statute of limitations. SDCL 6–1–4 states:

> Any civil action to recover the amounts paid by a county, municipality, township or school district under any of the conditions of §§ 6–1–1 to 6–1–3, inclusive, must not withstanding any other law or statute of limitations, be commenced within six months from the date of publication of the minutes recording the approval of the voucher in payment thereof or within six months from the filing of any audit report covering the expenditure therefor, whichever of the two events occurs the later; but, this limitation for commencement of civil actions shall not apply where any fraud or deceit was used in securing or performing such contract.

[¶ 16.] SDCL 6–1–4 allows six months from the date of the filing of any audit report. In this case, the special audit report was filed on May 28, 1998. City's action was commenced within six months of the audit. However, SDCL 6–1–4 applies only to "any civil action to recover the amounts paid by a county, municipality." In this case in the first transaction City did not pay any amounts. Since this action is not an action to recover amounts paid by the municipality, SDCL 6–1–4 does not apply.

[¶ 17.] The trial court applied the statute of limitations found in SDCL 15–2–13. That statute provides: "Except where, in special cases, a different limitation is prescribed by statute, the following civil actions other than for the recovery of real property can be commenced only within six years after the cause of action shall have accrued: (1) an action upon a contract."

[¶ 18.] SDCL 15–2–13 provides the relevant statute of limitations in this case. The trial court found that City had failed to show any fraud or deceit that would toll the six year statute of limitations. Therefore, the statute of limitations had run at the time that City commenced this action. The trial court's ruling in favor of the defendants on the first transaction is affirmed. Given the ruling on the statute of limitations issue, this Court need not address the issue of whether the trial court correctly determined that Mayor Rich did not have an interest in the purchase of the property in the first transaction in violation of SDCL 6–1–1.

## Second Transaction
### ISSUE TWO

[¶ 19.] **Was the trial court correct in finding fraud and deceit by Tobin and Rich in transaction two?**

[¶ 20.] Tobin and Rich do not appeal the trial court's holding that the second transaction is void due to Rich's and Tobin's interest in the transaction under SDCL 6–1–1. However, Rich and Tobin claim that the trial court erred in finding that their conduct in the second transaction constitutes fraud and deceit. Findings of fact are reviewed on appeal under the clearly erroneous standard. *Northwestern Bell Tel. Co. v. Stofferahn,* 461 N.W.2d 129 (S.D.1990). Fraud and deceit include not only affirmative acts, but also acts of omission. *Himrich v. Carpen-*

*ter,* 1997 SD 116, 569 N.W.2d 568; *Brevet Int'l., Inc. v. Great Plains Luggage Co.,* 2000 SD 5, 604 N.W.2d 268.

[¶ 21.] At the time Mayor Rich was considering acquiring a personal interest in City's land, he ordered, in his capacity as mayor, a second appraisal of the land in hopes that it would be lower. Furthermore, Mayor Rich did not inform either the Site Planning Board or the City Commission of the first appraisal. Mayor Rich argues that he took no action to conceal the first appraisal from the various boards. Regardless of any affirmative acts to conceal the appraisal, Mayor Rich had a fiduciary duty to City to make sure all appraisals and information regarding those appraisals was supplied. His failure to make sure both appraisals were provided constitutes fraud and deceit.

[¶ 22.] As public officers, Mayor Rich and Attorney Tobin put themselves in a position where their personal interests conflicted with their duty to the public. Both men used their professional positions for private gain. Their actions indicated corruption and favoritism in public office. SEA's immediate sale of seven lots for $77,000 displays city officials obtaining personal profit at the expense of City.

[¶ 23.] The trial court's ruling finding fraud and deceit on the part of Mayor Rich and City Attorney Tobin is affirmed.

### ISSUE THREE

[¶ 24.] **Did the trial court properly deny City's motion to amend its complaint after trial?**

[¶ 25.] After the trial, City attempted to amend its complaint to request a hearing to determine damages and liability both to City and to subsequent purchasers. The trial court denied the motion to amend, ruling that persons who were not

parties to this action had interests which could not be fully protected by the parties to this action and that the court had already made a determination on liability on the merits on this case.

[¶ 26.] The trial court then determined that the only remedy that could be imposed in the second transaction was to declare the contract void. Further, the trial court ordered that the exchanged property be returned to the party owning the property prior to the transaction and that City return $817 paid in cash by SEA. This ruling did not consider the plight of the people who purchased land from SEA that was now to be returned to City.

[¶ 27.] The original complaint in this action was brought as a declaratory judgment action to determine the legality of the two transactions. In its prayer for relief City asked "that if the court should find that either one or both of the land transactions between the City of Aberdeen and others is void, that the court take evidence and make its determination as to what remedies, if any, the City of Aberdeen has available and determine the rights of other persons and the title in the real estate involved in the questioned land transactions."

[¶ 28.] In this action, the amended complaint should have been granted. "A trial court may permit the amendment of pleadings before, during, and after trial without the adverse party's consent." *Tesch v. Tesch*, 399 N.W.2d 880, 882 (S.D.1987). Further, SDCL 15–6–17A allows City to sue on behalf of the subsequent purchasers in this action. It provides that: "[a] party authorized by statute may sue in its name without joining the party for whose benefit the action is brought." SDCL 15–6–17A. Prior case law of this Court supports the action taken by City and the form of the complaint. *See e.g. Hoiten v. City of Canistota*, 1998 SD 44, 579 N.W.2d 12; *Carr v. City of Sioux Falls*, 416 N.W.2d 602 (S.D.1987).

[¶ 29.] Additionally, defendants are unable to show any prejudice resulting from the granting of the motion to amend. In the initial complaint defendants were given notice that if City's action was successful, City would seek a subsequent hearing to determine liability. The amended complaint seeks to ensure that the citizens of Aberdeen who were subsequent purchasers in the underlying transactions have some remedy due to the wrongful actions of defendants. In this case further relief is necessary and proper.* The trial court's denial of the motion to amend is reversed.

[¶ 30.] This case is remanded for further proceedings to determine the liability of defendants to City and to subsequent purchasers.

[¶ 31.] Affirmed in part, reversed in part and remanded.

[¶ 32.] MILLER, Chief Justice, and KONENKAMP, Justice, and WILBUR, Circuit Judge, concur.

[¶ 33.] AMUNDSON, Justice, concurs in result.

[¶ 34.] TUCKER, Circuit Judge, for GILBERTSON, Justice, disqualified.

[¶ 35.] WILBUR, Circuit Judge, for SABERS, Justice, disqualified.

---

* In determining what relief is necessary and proper, the trial court should give due consideration to this Court's ruling in *Carlson v. Donnenwirth*, 75 S.D. 432, 67 N.W.2d 149 (1954); *Speckels v. Baldwin*, 512 N.W.2d 171 (S.D.1994); and *Himrich v. Carpenter*, 1997 SD 116, 569 N.W.2d 568.

AMUNDSON, Justice (concurring in result).

[¶ 36.] I agree with the majority that the trial court must determine the rights of all parties, now that this second land sale contract is held void. The effect of voiding this contract is to place the parties back in their original position. *Cf. Wolken v. Wade,* 406 N.W.2d 720 (S.D.1987). Once a court declares a contract void, it is treated as if it is rescinded.

> The right to rescind must be exercised *in toto,* allowing the contract to stand or fall as a whole.... [T]he effect of rescission of a contract is to put the parties back in the same position they were in prior to the making of the contract. Rescission requires restoration of the status quo. There can be thus no partial rescission of a contract. It is either valid or void *in toto.*

*Holden v. DuBois,* 665 P.2d 1175, 1177 (Okla.1983) (internal citations omitted).

"[T]he law abhors a forfeiture." BankWest v. Groseclose, 535 N.W.2d 860, 864 (S.D.1995) (citing *Ford v. Hofer,* 79 S.D. 257, 111 N.W.2d 214, 216 (S.D.1961)). To avoid forfeiture, it is only fair that all parties are placed in the same position each occupied prior to the voidance of the contract. This would require the trial court to order City to return the property it received from SEA, and SEA to return the property or monies received from the lot sales to City. Also, both City and SEA should be required to execute all deeds or documents necessary to insure that good title remains in the hands of the subsequent purchasers now part of this action.