2003 SD 26

**CITY OF ABERDEEN, Plaintiff and Appellee,**

v.

**Timothy RICH, Thomas Tobin, Sea Corporation, a South Dakota Corporation, Defendants and Appellants,**

and

**Roger Huff, Huff Development Corporation, a South Dakota Corporation, Defendants.**

**Nos. 22321, 22328.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 7, 2002.

Decided March 5, 2003.

Robin Jacobson Houwman of Danforth, Meierhenry & Meierhenry Sioux Falls, South Dakota, Attorneys for plaintiff and appellee.

Richard L. Russman of Rice, Ewinger & Russman Aberdeen, South Dakota, Attorneys for defendants and appellants Rich, Tobin and SEA Corporation.

Bruce Cutler of Thurow, Cutler & Batteen Aberdeen, South Dakota Development, Attorneys for defendants Huff and Huff.

ENG, Circuit Judge.

[¶ 1.] This case stems from two land transactions between the City of Aberdeen (City) and: former mayor Timothy Rich; former city attorney Thomas Tobin; Roger Huff and Huff Development, Inc.; and, SEA, Inc. City brought a declaratory judgment action against Rich, Tobin, Huff, Huff Development and SEA to determine whether the two land transactions should be declared null and void due to violations of SDCL 6-1-1. In a previous appeal, this Court affirmed the trial court's finding that the statute of limitations had run with regard to the first transaction. However, this Court reversed a trial court ruling with respect to amendment of the complaint on the second transaction and remanded the case for further proceedings to determine the liability of the defendants to City and to subsequent purchasers. The trial court awarded City $60,728.23 in damages. This Court affirms in part and reverses in part the trial court's award.

## FACTS AND PROCEDURE

[¶ 2.] This case stems from two land transactions between City and Rich, Tobin, Huff and Huff Development and SEA.

During all times relevant to this action, Rich was mayor of Aberdeen and Tobin was the Aberdeen City Attorney.

[¶ 3.] City brought a declaratory judgment action against Rich, Tobin, Huff, Huff Development and SEA to determine whether the two land transactions should be declared null and void pursuant to SDCL 6-1-1 which provides in pertinent part that:

> It shall be unlawful for any officer of a ... municipality ... who has been elected or appointed, to be interested, either by himself or agent, in any contract entered into by said ... municipality ... in the purchase of any real or personal property belonging to the ... municipality.... Such contract shall be null and void from the beginning.

[¶ 4.] The trial court found that any action based upon the first land transaction was time barred when there was no evidence of fraud or deceit. This Court affirmed that finding in a previous appeal. This Court also upheld the trial court's finding that the defendants' involvement in the second land transaction violated SDCL 6-1-1 and that the actions of the city attorney and mayor were fraudulent and deceitful. City of Aberdeen v. Rich, 2001 SD 55, 625 N.W.2d 582.

[¶ 5.] This appeal concerns the issue of liability under the second land transaction. That transaction involved a trade and sale of land between SEA and City that took place on May 30, 1995. On that date, Rich, in his capacity as mayor, quitclaimed some city land to SEA and SEA quitclaimed its property to City in addition to making a cash payment of $817.[1] On that same date, SEA sold seven lots in the

---

**1.** At the time of the transfer, SEA had four equal stockholders: Rich, Tobin, Huff and City Engineer, Francis Brink.

newly purchased/traded land to a third party for $77,000.

[¶ 6.] In the previous appeal, this Court remanded the case to the trial court for a determination of defendants' liability to City and to subsequent purchasers. This Court also instructed the trial court to give due consideration to its rulings in *Carlson v. City of Faith*, 75 S.D. 432, 67 N.W.2d 149 (1954); *Speckels v. Baldwin*, 512 N.W.2d 171 (S.D.1994); and, *Himrich v. Carpenter*, 1997 SD 116, 569 N.W.2d 568. On remand, the parties entered into a stipulation of facts and submitted briefs to the trial court. The trial court heard oral argument and made its decision from the bench, entering a judgment for City in the amount of $60,728.23. The judgment consisted of: the entire profit Rich, Tobin and SEA received on the sale of the property;[2] half of the audit fee;[3] and half of the abstract fee.[4] However, the parties agreed to set-off the damages award by the amount expended by the defendants in making the property suitable for residential · housing.[5] The trial court did not award attorney fees and did not award pre- or post-judgment interest.

[¶ 7.] Rich, Tobin and SEA, Inc. bring this appeal and City has filed a notice of review. The following issues are raised by Rich, Tobin, SEA and City and are to be determined by this Court:

Whether the trial court erred by awarding City monetary damages as a result of a contract that was rendered null and void as a matter of law.

Whether the trial court erred by awarding City audit and abstract fees in the form of disbursements.

Whether the trial court erred in refusing to award City interest and attorney's fees.

### STANDARD OF REVIEW

[¶ 8.] When evidence is presented without the appearance of live witnesses, but by way of deposition and stipulated facts, we are free to determine the facts as if presented here for the first time unaided by any deference to the trial court. *Muhlenkort v. Union County Land Trust*, 530 N.W.2d 658, 660 (S.D.1995); *Zacher v. Homestake Min. Co. of Cal.*, 514 N.W.2d 394, 395 (S.D.1994); *State v. Abourezk*, 359 N.W.2d 137, 142 (S.D.1984); *State Automobile Casualty Under. v. Ruotsalainen*, 81 S.D. 472, 479, 136 N.W.2d 884, 888 (1965).

[¶ 9.] We review a trial court's conclusions of law under a de novo standard. *Muhlenkort*, 530 N.W.2d at 660; *State v. Harris*, 494 N.W.2d 619, 622 (S.D.1993)(citing *Rusch v. Kauker*, 479 N.W.2d 496, 499 (S.D.1991)). Under this standard of review, " 'conclusions of law "are given no deference by this court on appeal.' " " *Muhlenkort*, 530 N.W.2d at 660; *Accord Harding Cty. v. S.D. Land Users Ass'n*, 486 N.W.2d 263, 264 (S.D. 1992); *Rusch*, 479 N.W.2d at 499; *Beville v. Univ. of S.D./Bd. of Regents*, 420 N.W.2d 9, 11 (S.D.1988).

### ANALYSIS AND DECISION

#### Gross Profits

[¶ 10.] City requested a damage award of $77,000. This is the amount of money SEA sold property for on the same day the trade/sale was approved by City. The trial court found that "the wrong lay at the

---

2. $77,000.

3. $5,866.30.

4. $1,980.

5. $24,118.07.

creation" of the void transaction. As a result, the court ordered the defendants to relinquish the $77,000 gross profit. This award is consistent with this Court's holdings in *Carlson, supra; Speckels, supra;* and *Himrich, supra*.

[¶ 11.] Conflict of interest statutes have their origins in the general principal that "no man can faithfully serve two masters, whose interests are or may be in conflict." *San Diego v. S.D. & L.A.R.R.Co.*, 44 Cal. 106, 1872 WL 1247 (1872). The general rule is strict enforcement of conflict of interest statutes so as to provide a strong disincentive for officers who might be tempted to take personal advantage of their public offices. *Thomson v. Call*, 38 Cal.3d 633, 214 Cal.Rptr. 139, 699 P.2d 316 (1985).

[¶ 12.] In *Carlson, supra*, the defendants, while city councilmen, received money from the city for goods and merchandise sold to the city individually or through corporations in which they were interested. This Court held that even though the councilmen were not acting fraudulently, they were bound to refund to the city the money paid to them on the sales in view of the statute making such transactions unlawful, null and void. *Carlson*, 75 S.D. at 434–36, 67 N.W.2d at 150–51. Similarly, in this case, SEA must refund to City money paid to it on the sale in light of the fact that the transaction was unlawful, null and void. In fact, such a conclusion is even more appropriate here because the trial court found actual fraud in this case. *See City of Aberdeen*, 2001 SD 55 at ¶ 23, 625 N.W.2d at 587.

[¶ 13.] In *Speckels, supra*, the Custer City Attorney entered into a lease-purchase agreement with the city where a for-profit corporation in which the attorney was a principal leased land from the city for twenty years. That same day, the attorney's corporation sublet the property to another corporation. This Court held that $700,000 in lease payments were unlawfully appropriated by the attorney and a fellow investor and that those payments had to be repaid to the city because the rent received by the investors deprived the city of that amount of money. *Speckels*, 512 N.W.2d at 175–176. Similarly, in this case, the defendants have deprived the city of $77,000. This money should be returned to City in accordance with this Court's holding in *Speckels*.

[¶ 14.] Finally, in *Himrich, supra*, the Custer City Attorney and fellow investor from *Speckels, supra*, argued that they were entitled to recover under the equitable defense of unjust enrichment. This Court recognized that, " 'he who comes into equity must come with clean hands[.]' " *Himrich*, 1997 SD 116 at ¶ 22, 569 N.W.2d at 573 (quoting *Myers v. Smith*, 208 N.W.2d 919, 921 (Iowa 1973)). Since the attorney and his fellow investor engaged in a purposeful violation of their fiduciary duties as public officers when they entered into a contract with the city for personal gain, this Court refused to condone that conduct and found no entitlement to equitable relief. *See Himrich*, 1997 SD 116 at ¶¶ 19–22, 569 N.W.2d at 573–574. This Court continues to adhere to the principles set forth in *Himrich* and, therefore, denies equitable relief and affirms the trial court's award of the $77,000 in gross profits.

[¶ 15.] Strict enforcement of conflict of interest laws has been the principle adhered to by courts throughout this country. In *Thomson, supra*, the taxpayer plaintiffs challenged the validity of a transaction in which the defendant purchased a parcel of land from a husband and wife and then conveyed that parcel to the City of Albany while the husband was a member of the Albany City Council. Despite the fact that the husband and wife were

not acting fraudulently, they were liable to the city for the proceeds they received from the sale, plus interest, while the city retained title to the land. This was consistent with the policy that "the city or agency is entitled to recover any consideration which it has paid, without restoring the benefits received under the contract." *Thomson*, 214 Cal.Rptr. 139, 699 P.2d at 324.

[¶ 16.] The ruling in *Thomson* is consistent with this Court's holding in *Bozied v. City of Brookings*, 2001 SD 150, 638 N.W.2d 264, that parties cannot be paid under void public contracts. In *Bozied*, a construction company was awarded a construction contract with the City of Brookings after the owner of the company resigned from the planning committee responsible for developing the project package. After construction began, the city issued a series of change orders. Those change orders were never submitted for public bidding, but were completed by the original construction company. The change orders were held to be a void contract. This Court determined that "no matter how innocent a contractor may be, there can be no recovery on a void contract, even to right a gross injustice." *Bozied*, 2001 SD 150 at ¶ 19, 638 N.W.2d at 272.

[¶ 17.] This Court also recognized that, absent a showing of " 'fraud, undue influence, or collusion, in the making of the payment,' " several courts have allowed a contractor to retain funds already paid but

not to recover additional funds. *Bozied*, 2001 SD 150 at ¶ 20, 638 N.W.2d at 272 (quoting *Tobin v. Town Council of Sundance*, 45 Wyo. 219, 17 P.2d 666, 674 (1933)). *See also Elview Construction Co. Inc., v. North Scott Community*, 373 N.W.2d 138, 144 (Iowa 1985); *Gamewell Company v. City of Phoenix*, 216 F.2d 928, 941 (9th Cir.1954); *Village of Pillager v. Hewitt*, 98 Minn. 265, 107 N.W. 815, 816 (1906); Robert A. Shapiro, *Right of Municipal Corporation to Recover Back From Contractor Payments Made Under Contract Violating Competitive Bidding Statute*, 33 ALR3d 397 (1970). However, "[s]uch a conclusion, will by necessity, be tempered by the facts of each case." *Bozied* 2001 SD 150 at ¶ 23, 638 N.W.2d at 273. Since this case involves fraud and deceit, the defendants should not be allowed to retain funds already paid. *See id.*

[¶ 18.] Therefore, this Court affirms the trial court's award of $77,000 gross profits and will not allow any equitable relief to the defendants. Furthermore, in accordance with the agreement of the parties and in compliance with this Court's policy of strict enforcement of conflict of interest laws, City is entitled to keep all of the benefits of the void contract pursuant to the holding in *Bozied, supra*. This includes the return of City's land, City's retention of the property and the $817 conveyed to it by SEA and an award of the gross profits to City. Since the parties agreed to a set-off, it will be upheld.[6]

---

6. Generally, a trial court's findings of fact are accorded great deference. However, without regard to the labels used, when those "findings" proceed from stipulated facts, as in the instant case, the "findings" are tantamount to conclusions of law, with the stipulation of facts being the functional equivalent of true findings of fact. *See Stiles v. Brown*, 380 So.2d 792, 794 (Ala.1980). *See also City of Spencer v. Hawkeye Security Ins. Co.*, 216 N.W.2d 406, 408 (Iowa 1974) ("Where the facts are not in material dispute, interpretation placed thereon by trial court becomes a question of law which is not conclusive on appeal."); *Schroeder v. Horack*, 592 S.W.2d 742, 744 (Mo.1979)(only issue on appeal was whether trial court drew the proper legal conclusions from the stipulated facts). On appeal, this court reviews conclusions of law for legal correctness. *Copper State Thrift & Loan v. Bruno*, 735 P.2d 387, 389 (Utah App.

### Pre and Post-judgment Interest

■ [¶ 19.] Pursuant to SDCL 21–1–13.1, "[a]ny person who is entitled to recover damages ... is entitled to recover interest thereon from the day that the loss or damage occurred[.]" The defendants argue that City is not entitled to prejudgment interest because it cannot be obtained if damages remain uncertain until determined by the court. *See* SDCL 21–1–11. However, the adoption of SDCL 21–1–13.1 in 1990 abrogated the rule that prejudgment interest cannot be obtained if damages remain uncertain until determined by a court. *Fritzel v. Roy Johnson Const.,* 1999 SD 59, ¶ 12, 594 N.W.2d 336, 339. Under the present rule in SDCL 21–1–13.1, prejudgment interest is allowed from the day the loss or damage occurred regardless of whether the damages are certain. *Id.*

[¶ 20.] The trial court erred in its determination that no interest should be allowed based on this Court's holding in ·Carlson, 75 S.D. at 438, 67 N.W.2d at 152. The trial court failed to recognize that after that 1954 case, South Dakota adopted SDCL 21–1–13.1 which makes prejudgment interest mandatory. Therefore, City is entitled to prejudgment interest from the date the void contract was entered into, May 30, 1995.[7]

■ [¶ 21.] City is also entitled to post-judgment interest on the award. SDCL 15–16–3 states that "[w]hen a judgment is for the recovery of money, interest from the time of the verdict or decision until judgment be finally entered must be added to the judgment of the party entitled thereto." Therefore, City is entitled to interest for the time between December 19, 2001, when the verdict was rendered, until February 20, 2002, when the judgment was satisfied.

[¶ 22.] The trial court erred in refusing to allow an award of interest.

### Set-off

■ [¶ 23.] The parties agreed to set-off the award by $24,118.07, the amount expended by the defendants in making the property suitable for residential housing. The issue before this Court is whether the $24,118.07 should be deducted from the $77,000 before or after interest is calculated.

[¶ 24.] This Court has already determined that the damages are $77,000; however, the parties stipulated to set-off this amount by $24,118.07, thereby reducing the amount of damages to $52,881.93. Therefore, prejudgment interest accrued on the $52,881.93 from May 30, 1995, the date of the transfer.

### Attorney's fees

■ [¶ 25.] The general rule is attorney's fees are allowed when there is either a contractual agreement that the prevailing party is entitled to attorney's fees or there is statutory authority authorizing an award of attorney's fees. *See* Matter of Estate of O'Keefe, 1998 SD 92, ¶ 17, 583 N.W.2d 138, 142. Since there is no contractual agreement and no statutory authority, the only way that attorney's fees can be awarded is if this Court determines that City, as a victim of fraud, is entitled to such an award.

[¶ 26.] In *Jacobson v. Gulbransen,* 2001 SD 33, 623 N.W.2d 84, the prevailing party argued that he was entitled to attorney's fees because the lawsuit was induced

---

1987). *See Scharf v. BMG Corp.,* 700 P.2d 1068, 1070 (Utah 1985).

*Diversified Equities v. Amer. Sav. & Loan,* 739 P.2d 1133, 1136 (Utah Ct.App.1987).

7. This was the same date defendants sold the property for residential development and received proceeds of $77,000.

by fraud. He urged this Court to carve out an exception to the general rule that attorney's fees may only be awarded by contract or when explicitly authorized by statute. *See O'Keefe, supra.* This Court declined to carve out such an exception then and it declines to do so now.

### Abstract Fees and Audit Fees

[¶ 27.] The abstract fees and audit fees awarded by the trial court were not consistent with this Court's strict construction of SDCL 15–17–37. This Court has consistently limited taxation of costs to those disbursements specifically authorized by statute.[8] Furthermore, this Court has been extremely hesitant to allow disbursements for "other similar expenses and charges" as mentioned in SDCL 15–17–37. *See Nelson v. Nelson Cattle Co.,* 513 N.W.2d 900 (S.D.1994); *Atkins v. Stratmeyer,* 1999 SD 131, 600 N.W.2d 891; *Zahn v. Musick,* 2000 SD 26, 605 N.W.2d 823.

[¶ 28.] This Court explained the philosophy behind its strict construction of cost or disbursement statutes in *State Highway Commission v. Hayes Estate,* 82 S.D. 27, 44–45, 140 N.W.2d 680, 690 (1966), stating:

> Under our statute fees paid photographers are not specifically mentioned, so if allowable, they must come within the term of "procuring necessary evidence." We believe the statute should be construed not to cover photographer fees and expenses. The language used is broad and comprehensive and we do not say such evidence was not necessary to a proper trial of the action. However,

the same is true of much that is done in procuring necessary evidence for use at the trial. For example, most discovery proceedings are designed and initiated to procure necessary evidence. The same purpose is intended when written statements are taken from witnesses or prospective witnesses or when experts are retained and consulted. The time and money expended and the techniques employed in many instances are limited only by the ingenuity of the person using them. Much of what is done procures evidence which is necessary for the trial. Yet quite generally amounts expended and disbursements made in preparing for trial are not considered as necessary in an allowance of costs. *See* Annotation 97 ALR2d § 15. We can visualize where to allow the expense of obtaining photographs to be taxed against an unsuccessful litigant might open the door to a "Pandora's Box" with wide variation between circuits and judges within the same circuit as to what is allowable and in what amount. Questions immediately arise as to how many photographs are considered necessary and of what type and size. What about money paid for moving pictures which more frequently are being used in personal injury cases? Can the expense be taxed only if paid to a professional photographer and should it include travel charges? If the photographs are taken by an attorney in the case, or an investigator, are such expenses chargeable? Myriad situations fraught with difficulty in application present themselves.[9] (footnote added).

---

8. "Such expenditures include costs of telephonic hearings, costs of telephoto or fax charges, fees of witnesses, interpreters, translators, officers, printers, service of process, filing, expenses from telephone calls, copying, costs of original and copies of transcripts and reporter's attendance fees, court appointed experts and other similar expenses and charges." SDCL 15–17–37

9. While this Court's explanation in *Hayes* dealt with the prior cost statute, SDCL 15–17–4, the reasoning was used in the chain of cases used to decide *Nelson. Nelson* expressly relied on *Heer v. State,* 432 N.W.2d 559 (S.D.1988). *Heer* was decided upon the au-

[¶ 29.] This leaves the Court with the perplexing question of where to draw the line. Such duty is practically impossible; therefore, this court upholds its policy of strict construction of SDCL 15–17–37 pursuant to *Atkins* and *Nelson*. As a result, neither abstract nor audit fees shall be included as taxable disbursements under SDCL 15–17–37.

[¶ 30.] That part of the judgment awarding gross profits is affirmed; that part of the judgment denying attorney fees is affirmed; that part of the judgment denying pre- and post-judgment interest is reversed; that part of the judgment awarding abstract fees and audit fees is reversed; and, we find that the set-off should be deducted from the award of gross-profits before pre- and post-judgment interest is calculated.

[¶ 31.] KONENKAMP and ZINTER, Justices, and AMUNDSON, Retired Justice, and TRANDAHL, Circuit Judge, concur.

[¶ 32.] ENG, Circuit Judge, for GILBERTSON, Chief Justice, disqualified.

[¶ 33.] TRANDAHL, Circuit Judge, for SABERS, Justice, disqualified.

[¶ 34.] MEIERHENRY, Justice, not having been a member of the Court at the time this action was submitted to the Court did not participate.

thority of *Wagner v. Wagner*, 83 S.D. 565, 163 N.W.2d 339 (1968). In turn, *Wagner* relied on *Hayes*.