#24405, #24413-aff in pt, rev in pt & rem-BARNETT, Circuit Judge

**2007 SD 111**

## IN THE SUPREME COURT

## OF THE

## STATE OF SOUTH DAKOTA

\* \* \* \*

ALL STAR CONSTRUCTION COMPANY, INC.,
a South Dakota Corporation,                                    Plaintiff and Appellant,

    v.

MARK KOEHN and ALICIA GARCIA,                       Defendants and Appellees.

\* \* \* \*

### APPEAL FROM THE CIRCUIT COURT
### OF THE SEVENTH JUDICIAL CIRCUIT
### PENNINGTON, COUNTY SOUTH DAKOTA

\* \* \* \*

### HONORABLE A.P. FULLER
Judge

\* \* \* \*

BARTON R. BANKS of
Banks, Johnson, Colbath,
  Sumner & Kappelman, PLLC          Attorneys for plaintiff
Rapid City, South Dakota               and appellant.

MICHAEL C. LOOS of
Clayborne, Loos & Strommen, LLP        Attorneys for defendants
Rapid City, South Dakota               and appellees.

\* \* \* \*

CONSIDERED ON BRIEFS
ON AUGUST 28, 2007

OPINION FILED 10/31/07

BARNETT, Circuit Judge.

[¶1.]      All Star Construction Company, Inc., (All Star) appeals from a judgment ordering it to "specifically perform under the terms of the contract and complete the punch list items set forth in Exhibit 118 as revised from time to time on the record, as well as the reconstruction and repair of the shower[.]"  The judgment also ordered Mark Koehn and Alicia Garcia (Homeowners) to "specifically perform under the terms of the contract and pay to [All Star] the sum of $56,516.81 as the reasonable value of the work completed and not yet paid."

[¶2.]      We affirm in part, reverse in part, and remand.

### FACTS AND PROCEDURAL HISTORY

[¶3.]      Homeowners are practicing attorneys in Rapid City, South Dakota. They decided to remodel their home and build an addition to it.  They contacted All Star and, on November 1, 2002, signed a form contract provided by All Star.  The contract contemplated that some items listed in the contract were allowances or estimates.  While figures were listed in the contract for these items, the contract also stated that "estimates are provided for budgeting purposes only.  More accurate pricing can be provided when design and construction details have been furnished." Additionally, the contract stated that "[a]llowance figures are included as *actual costs to the contractor.  Final job expenses will be adjusted accordingly."  (emphasis supplied).  Notably, the contract did not define actual costs.

[¶4.]      In the contract All Star warranted that all work would be completed in a workmanlike manner according to standard practices.  The contract provided that "any alteration or deviation from above specifications including extra costs *will be

*executed only upon written orders*, and will become an extra charge over and above the estimate." (emphasis supplied).

[¶5.]     The base contract price was $122,500 plus excise taxes.  Approximately $51,000 of this total was denominated as allowances, which could be revised when changes were ordered by Homeowners, or as costs increased over the stated allowances.  All Star later claimed a fifteen percent markup for overhead as an actual cost, and later reduced the markup claim to eight percent.  Neither figure appears in either the contract or the change orders.  Furthermore, All Star admitted that neither markup had ever been discussed with Homeowners during construction.

[¶6.]     Throughout the course of the project Homeowners requested changes in the plan and details.  On four occasions All Star presented Homeowners with a written change order, which they signed.  The change orders described generally what caused the extra bill, but did not specify whether an eight percent markup had been added in.  The change orders simply listed labor and materials.  A fifth change order was presented after the work was completed, and was not signed by Homeowners.  At trial Homeowners conceded that the amount listed on the fifth change order was due and owing, with the exception of a possible unstated eight percent markup.  To further complicate matters, other changes were requested or approved by Homeowners, and performed by All Star, yet neither side presented or demanded a written change order at the time.

[¶7.]     All Star admitted at trial that it was required to secure a signed change order in every instance, and that it did not do so in all cases.  However, All Star contended, and the trial court agreed, that in such instances Homeowners were

present and living in the home and not only requested the changes, but acquiesced despite the lack of a written change order.

[¶8.]    In mid-2003 Homeowners were significantly behind in payments owed under the contract due to problems securing adequate financing. About this time, Homeowners hosted a family reunion and asked that All Star leave the jobsite. Due to the arrearages, All Star did not return to the home after the reunion, nor were they asked by Homeowners to come back. Homeowners did obtain some additional financing and were able to pay $90,000; however, this left almost $60,000 still owing. For two years there was no final construction or payment. Homeowners submitted a "punch list," a list of finishing work that was not completed. All Star admitted that some of the finishing work was in fact not completed, but argued that its nonperformance was excused by Homeowners' nonpayment. Additionally, the parties agreed that an expensive waterfall shower leaked, though they could not agree on the cause. Eventually All Star sued for payment under the contract. Homeowners sought an offset for unfinished or non-workmanlike efforts.

[¶9.]    The case was heard at a court trial. After all evidence had been submitted, the trial court ruled from the bench. The trial court asked Homeowners if they wanted to amend their answer to seek specific performance. Homeowners so moved. The motion was granted over All Star's objection. The trial court ordered All Star to go back in the home, fix the leaking shower, and complete the work listed on the punch list. The trial court further ordered the Homeowners to "specifically perform" their part of the contract, by paying All Star $56,581.86. All Star sought prejudgment interest under SDCL 21-1-13.1. However, the trial court denied this

claim on the ground that it had not awarded damages, but had instead awarded specific performance of $56,581.86.

[¶10.] The trial court denied All Star's claim for an eight percent markup on any changes which were approved by Homeowners but not evidenced by a written change order. The written change orders do not specify whether they contain an eight percent markup. It is unclear whether the court intended that Homeowners be responsible for such a charge on the written change orders. Homeowners contend that they stipulated to all charges in the five change orders, except for any unstated eight percent markup.

[¶11.] All Star raises four issues on appeal:

> Whether the trial court erred in ordering All Star to specifically perform under the contract.

> Whether the trial court erred in failing to award prejudgment interest to All Star.

> Whether All Star is entitled to an eight percent markup on labor and materials charged under change order number five.

> Whether All Star is entitled to eight percent overhead or markup on the allowance overruns under the contract.

[¶12.] Homeowners filed a notice of review and raise one issue:

> Whether Homeowners waived the requirement that all changes be in writing.

## STANDARD OF REVIEW

[¶13.] We review the trial court's findings of fact under the clearly erroneous standard. City of Deadwood v. Summit, Inc., 2000 SD 29, ¶ 9, 607 NW2d 22, 25. "Conclusions of law are reviewed under a de novo standard, giving no deference to

the circuit court's conclusions of law." *Id.* The equitable remedy of specific performance is addressed to the sound discretion of the court, to be granted or denied according to the facts and circumstances in each instance. Stugelmayer v. Ulmer, 260 NW2d 236, 238 (SD 1977). We review the decision of the trial court regarding an equitable remedy under the abuse of discretion standard. Ziegler Furniture and Funeral Home, Inc, v. Cicmanec, 2006 SD 6, ¶ 14, 709 NW2d 350, 354.

ANALYSIS AND DECISION

ISSUE ONE

[¶14.] **Whether the trial court erred in ordering All Star to specifically perform under the contract.**

[¶15.] All Star contends that the trial court erred by ordering it to specifically perform the work itemized on the punch list. We agree.

[¶16.] Specific performance was not pleaded or tried. Neither party requested specific performance in the pleadings. Specific performance was never litigated or mentioned by either party during the evidentiary phase of trial.

[¶17.] The first mention of specific performance in this case came not from a party, but from the trial court as it issued its bench ruling. The court stated, "I was hoping that the defendant would make a motion based upon the evidence in this case to amend its pleadings to allege specific performance. Does the defense?" Counsel for defense took the trial court's suggestion:

> If it will help the Court with its decision, we'd so move. My sense was if the Court is looking for an explanation on items that specifically Mr. Declerq testified to, that under the law, his testimony serves equally as establishing what the owner offset would be, but if it's specific performance, one way or the other, we're asking that the shower be done within the context of the suit.

[¶18.]    The court then stated, "If you move for specific performance, then I know what my decision is going to be." Counsel for the defense replied, "We've so moved, Your honor." Counsel for All Star immediately objected, argued the illegality of such an order, and moved to amend All Star's pleadings:

> From the plaintiff's perspective, with all due respect, I don't believe that the Court can legally order specific performance unless it can also find a breach of contract. In our submissions to the Court, we acknowledge that there were some items remaining to be completed on this job. However, until such time as the contractor has received payment due, that performance is illegally [sic] excused. And to the extent that maybe submissions or my complaint don't [sic] adequately set forth that, we would likewise move to amend to include that.

[¶19.]    This brief exchange between counsel and the court does not meet the requirements of SDCL 15-6-15(b) which provides, in part, "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." In American Property Services, Inc. v. Barringer, 256 NW2d 887, 891 (SD 1977), we outlined the test which must be met before a party may be awarded relief not requested in the pleadings:

> The test for allowing an adjudication of an issue under FRCP 15(b) and SDCL 15-6-15(b) tried by implied consent is whether the opposing party will be prejudiced by the implied amendment, *i.e.*, did he have a fair opportunity to litigate the issue, and could he have offered any additional evidence if the case had been tried on the different issue. Moore's Federal Practice ¶ 15.13(2) at 993; Lomartira v. American Automobile Insurance Co., 1967, 2 Cir 371 F2d 550; Deitz v. Bowman, 1975 DCSD, 403 FSupp 1111. Where there has not been a fair opportunity for a party to be heard on the issue and/or additional evidence could have

been offered, any implied amendment would be prejudicial
and no trial by implied consent exists.

[¶20.]    In this case, All Star was prejudiced by the trial court's ruling that All Star could not be awarded prejudgment interest because the court awarded specific performance of $56,581.86 rather than awarding that amount as damages. All Star did not have a fair opportunity to litigate whether specific performance was an appropriate remedy; the issue was initially raised by the trial court when it delivered its ruling from the bench. Had All Star known that specific performance was a possible remedy it may well have presented evidence regarding whether or not the remaining work was of the type that any contractor could perform, a question common to specific performance cases. Because the trial court raised this issue at the end of trial, we can only speculate on how the evidence might have come in differently. There was no evidence from either side at trial on the issue.

[¶21.]    Although our previous cases suggest that leave to amend pleadings should be granted to conform the case to the evidence adduced at trial, this rule is not without limits. In Oesterling v. Oesterling, 354 NW2d 735 (SD 1984), the trial court proposed an affirmative defense at the end of evidence, and relied on that defense in ruling for the defendant. Plaintiff was not given any legitimate opportunity to contest the defense. We reversed, holding that affirmative defenses must be pleaded as such, and finding that the plaintiff in that case had no notice that she would be called upon to respond to the court's suggested defense. The present case is similar.

[¶22.]     Thus, the issue of specific performance was not tried by implied consent. SDCL 15-6-16(b); *Barringer, supra*. The trial court abused its discretion in ordering specific performance.

ISSUE TWO

[¶23.]     **Whether the trial court erred in failing to award All Star prejudgment interest.**

[¶24.]     Prejudgment interest on contract damages is governed by SDCL 21-1-13.1:

> Any person who is entitled to recover damages, whether in the principal action or by counterclaim, cross claim, or third-party claim, is entitled to recover interest thereon from the day that the loss or damage occurred, except during such time as the debtor is prevented by law, or by act of the creditor, from paying the debt.

This Court has recently held that an award of interest under this statute is mandatory. Bunkers v. Jacobson, 2002 SD 135, ¶ 44, 653 NW2d 732, 744 ; City of Aberdeen v. Rich, 2003 SD 27, ¶ 19, 658 NW2d 775, 781. Prejudgment interest is allowed from the date of the loss regardless of whether the damages were known with certainty. City of Aberdeen v. Rich, 2003 SD 27 at ¶ 19, 658 NW2d at 781.

[¶25.]     In this case, the trial court concluded that damages were not easily ascertainable and ordered Homeowners to specifically perform their obligations under the contract and pay All Star $56,516.81. The trial court further ordered that "no prejudgment interest is awarded since no damages are assessed." Simply couching an award of damages in terms of specific performance cannot operate to defeat SDCL 21-1-13.1 and this Court's holdings in *Bunkers* and *City of Aberdeen*. If

this were the case, every judgment awarding contract damages could be relabeled an order for specific performance, and prejudgment interest would never be mandatory.

[¶26.] The trial court erred in denying prejudgment interest.

ISSUE THREE

[¶27.] **Whether All Star is entitled to an eight percent markup on change order five.**

[¶28.] The parties dispute whether All Star is entitled to overhead on the extra labor and materials charged under change order five. All Star asserts that during trial Homeowners stipulated to the overhead markup in change order five by stipulating to change order five itself. The trial court struck the eight percent markup for overhead from change order five.

[¶29.] Change order five, dated October 30, 2003, was not executed by Homeowners, but was stipulated at trial to be included in amounts due under the contract, subject to offsets or credits due Homeowners. Homeowners assert that this stipulation was limited to the claims and charges set forth in writing, as opposed to All Star's present claim for additional recovery for items not supported by the original contract and written change orders.

[¶30.] "Oral stipulations of the parties in the presence of the court are generally held to be binding, especially when acted upon or entered on the court record, and need not be signed by the parties or their attorneys." Matter of Estate of Eberle, 505 NW2d 767, 770 (SD 1993). "While no particular form of stipulation is required when made orally in open court except that it be noted in the minutes, its terms must be definite and certain in order to render the proper basis for a judicial decision." *Id.*

[¶31.]    In this case, the Homeowners did not stipulate to the eight percent markup in change order five. No such markup percentage appears in the change order itself. The record reflects that counsel for the Homeowners did stipulate to the change orders: "[w]e'll stipulate that [the change order] is what it says it was, that they were presented to my clients; and that they're due and owing under the contract, *subject to offsets*." (emphasis added). However, at the time of this stipulation, neither attorney made any mention of whether an eight percent markup was included within change order five. Finally, appellees' counsel stated that his parties' stipulation was "subject to offsets." In other words, it was subject to anything that might be owing to the Homeowners by way of the contract. This stipulation was not sufficiently definite to enable the court to give it an exact meaning. Therefore, it was proper for the trial court to not give the stipulation any weight with respect to the eight percent overhead markup on change order five.

## ISSUE FOUR

[¶32.]    **Whether All Star is entitled to its overhead on the allowance overruns under the contract.**

[¶33.]    The trial court struck the eight percent overhead markup from all of the allowance overruns. All Star claims it is entitled to an eight percent markup for company overhead on the allowance overruns under the terms of the contract which provide that "allowance figures are included as *actual costs* to the contractor." All Star asserts that the phrase "actual costs" encompasses overhead.

> Contract interpretation is a question of law reviewable de novo. Because we can review the contract as easily as the trial court, there is no presumption in favor of the trial court's determination. When the meaning of contractual language is plain and unambiguous, construction is not

-10-

> necessary.  If a contract is found to be ambiguous the rules
> of construction apply.  Whether the language of a contract
> is ambiguous is.  .  . a question of law.

*Ziegler Furniture and Funeral Home,* 2006 SD 6 at ¶ 14, 709 NW2d at 354.

[¶34.]        In determining ambiguity we have stated:

> A contract is not rendered ambiguous simply because the
> parties do not agree on its proper construction or their
> intent upon executing the contract.  Rather, a contract is
> ambiguous only when it is capable of more than one
> meaning when viewed objectively by a reasonably
> intelligent person who has examined the context of the
> entire integrated agreement.

*Singpiel v. Morris,* 1998 SD 86, ¶ 16, 582 NW2d 715, 719.

[¶35.]        Applying these principles to the language of the contract in this case, ambiguity does exist.  The relevant provision states "[a]llowance figures are included as *actual costs* to the contractor.  Final job expenses will be adjusted accordingly."  (emphasis added).  On its face, the contract does not define what is meant by the phrase "actual costs."  Thus, the phrase "actual costs" could be capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.

[¶36.]        The inquiry is whether the parties intended to include an eight percent markup for overhead as "actual costs" under contract.  All Star admits that the eight percent overhead markup was never discussed at the time of contract formation.  In fact, the markup was not discussed at all between the parties until All Star submitted its final settlement summary, and that

summary claimed a fifteen percent markup on the allowance overruns. Only at trial did All Star reduce its request for overhead markup to eight percent.

[¶37.] The plain and ordinary meaning of the phrase "actual costs" in a contract between a contractor and a homeowner does not necessarily include overhead. This Court has allowed a contractor to recover overhead expenses against a homeowner when the construction contract *unambiguously* stated that the contractor was entitled to a percentage mark-up for profit and overhead on all items. *Bunkers*, 653 NW2d at 738. However, in *Bunkers* the trial court denied the contractor's claim for excise tax as an actual cost.

[¶38.] Finally, because the language in the All Star contract is ambiguous, the ambiguity must be resolved in favor of the non-drafting party. Zochert v. Nat'l Farmers Union Property & Gas Co., 1998 SD 34, ¶ 5, 576 NW2d 531, 532. All Star drafted the contract in this case and thus the ambiguity will be resolved in favor of Homeowners. In this case, "actual costs" cannot be read to include overhead.

[¶39.] The trial court did not err in refusing to allow the charge of eight percent for overhead on all of the allowance overruns.

## ISSUE FIVE

[¶40.] **Whether Homeowners waived the requirement that all changes be in writing.**

[¶41.] The contract in this case provided, "[a]ny alteration or deviation from above modifications involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate." Homeowners dispute whether All Star can recover any amount for the extra work and materials supplied

at Homeowners' request, or for the allowance overrun costs incurred, where All Star did not execute a written change order for such changes. The trial court concluded that Homeowners could not avoid paying for the extra work and materials. The trial court relied on Reif v. Smith, 319 NW2d 815 (SD 1982).

[¶42.]     This Court held in *Reif*:

> Generally, provisions [requiring written change orders] prevent contractors from recovering for alterations or extras not subject to a written order. Such provisions, however, are impliedly waived by the owner where he has knowledge of the change, fails to object to the change, and other circumstances exists which negate the provision; *i.e.* the builder expects additional payment, the alteration was an unforeseen necessity or obvious, subsequent oral agreement, or it was ordered or authorized by the owner.

319 NW2d at 817. Additionally, repeated or entire disregard for contract provisions acts as a waiver of the written change order provision. *Id.*

[¶43.]     The contract in *Reif* included the following provision: "Section 15. Work shall be changed and contract price and completion shall be modified only as set out in written change order." 319 NW2d at 817. Problems arose in *Reif* when the original building plans proved inadequate and required numerous changes during the construction. The owners repeatedly visited the construction site and were aware of problems created by the plans and the changes. Yet, none of the changes or additions were made pursuant to written change orders as specified in Section 15. When the contractor had nearly finished the interior work, he gave the owners a bill for the balance due on the contract plus the extra labor and material due to changes. The owners refused to pay the bill, ordered the contractor off the premises, and refused to let him complete the work. Because owners had knowledge of the changes,

failed to object to the changes, and authored the contract including Section 15, they were held liable for the costs of the changes.

[¶44.]     The facts of this case are remarkably parallel to those in *Reif*.  Here, Homeowners provided the plans for this construction project.  When those plans proved defective, changes became necessary.  While some changes were reflected in five separate change orders, Homeowners repeatedly requested extra work, upgraded various allowance items without requesting a bid proposal or a written change order in advance, and did not request a written change order after the fact.  Just as the owners in *Reif* were found to have notice by frequently visiting the construction site, here Homeowners lived in the home while all the work was being done.  Thus, the trial court correctly concluded that Homeowners waived the contract provision requiring written change orders when Homeowners requested or had knowledge of the changes, and failed to object to those changes or to the lack of a written change order.

[¶45.]     The trial court did not err in refusing to allow the charge of eight percent for overhead on the work performed by All Star under change order five.

CONCLUSION

[¶46.]     We affirm in part, reverse in part, and remand for the calculation of both parties' damages in accordance with this opinion.

[¶47.]     GILBERTSON, Chief Justice, and ZINTER and MEIERHENRY, Justices, concur.

[¶48.]     KONENKAMP, Justice, disqualified.

[¶49.]     BARNETT, Circuit Judge, for SABERS, Justice, disqualified.