#25777, #25794-aff in pt & rev in pt-DG

**2011 S.D. 31**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

RICHARD T. ORR,                                    Plaintiff and Appellee,

v.

SHELDON COOK,                                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
YANKTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE ARTHUR L. RUSCH
Judge

\* \* \* \*

CATHY A. KNECHT
Sioux Falls, South Dakota                          Attorney for plaintiff
                                                   and appellee.


DAVID M. HOSMER
Yankton, South Dakota                              Attorney for defendant
                                                   and appellant.

\* \* \* \*

                                                   CONSIDERED ON BRIEFS
                                                   ON MAY 23, 2011

                                                   OPINION FILED **06/29/11**

GILBERTSON, Chief Justice

[¶1.]        For several years, the parties had a partnership agreement to conduct

a cow-calf operation.  They sold the cows and calves in the spring of 2007.  The

parties disagreed on the disbursement of the proceeds.  The trial court determined

the value of the born and unborn calves based on a variation of an expert's

testimony.  Cook challenges the trial court's valuation and other reimbursements on

appeal.  We affirm in part and reverse in part.

## FACTS

[¶2.]        Richard Orr and Sheldon Cook orally formed a partnership in 2002 to

conduct a cow-calf operation.  Under the arrangement, Cook would purchase cows

and Orr would provide an area to keep them.  Orr was also responsible for the cows'

care, including feeding and calving.  After Cook sold the calves, 60% of the gross

proceeds were paid to Orr and 40% to Cook.  Orr paid 60% of post-weaning feed and

veterinarian bills for the calves and Cook paid 40%.  Cook was solely responsible for

all veterinarian bills for any cows or bulls.  The partnership operated under this

arrangement until the spring of 2007.

[¶3.]        On March 29, 2007, Cook sold 240 cows, including 67 cow-calf pairs, 40

"open" or not-pregnant cows, 132 pregnant cows, and one sick calf.[1]  Cook received

$230,935.00 from the sale.  Orr sued Cook, disputing the reimbursement amount

Cook owed him from that sale and for the cost of feeding and caring for the cows

during the winter of 2007.  Before trial, the parties entered into a stipulation,

---

1.        Other cows and calves were sold on July 3, 2007, but Orr did not make a
          claim for proceeds received from that sale.

leaving only two issues remaining for trial: 1) the value of the calves, born and unborn; and 2) the amount of reimbursement Cook owed Orr for feed and veterinarian costs for the calves.

[¶4.]     At trial, experts for both Cook and Orr testified regarding the valuation of the livestock sold, and, consequently, the amount of reimbursement Cook owed Orr. Evidence was also presented regarding the cost of feed and veterinarian bills. The trial court awarded Orr $41,614.56. After judgment was entered, Orr moved for prejudgment interest and costs. The trial court denied Orr's request because it was made for the first time in his Application for Taxation of Disbursements.

[¶5.]     On appeal, the issues presented are:

1. Whether the trial court was clearly erroneous in determining the value of the calves.

2. Whether the trial court was clearly erroneous in determining the amount of reimbursement Cook owed Orr for feed and veterinarian costs.

By notice of review, Orr challenges:

3. Whether the trial court erred in denying prejudgment interest and costs.

**STANDARD OF REVIEW**

[¶6.]     Whether the trial court used the correct method for determining the value of property is a question of law reviewed de novo. *In re Dissolution of Midnight Star Enters., L.P.,* 2006 S.D. 98, ¶ 7, 724 N.W.2d 334, 336. However, we review the trial court's valuation of property under the clearly erroneous standard. *Id.* "We will declare a finding of fact clearly erroneous only if we are definitely and

firmly convinced that a mistake has been made." *Lien v. Lien*, 2004 S.D. 8, ¶ 14, 674 N.W.2d 816, 822 (citing *First Nat'l Bank in Brookings v. Kuechenmeister,* 2002 S.D. 9, ¶ 12, 639 N.W.2d 184, 187).

## ANALYSIS

[¶7.] **1. Whether the trial court was clearly erroneous in determining the value of the calves.**

[¶8.] When the herd was sold in May 2007, 67 calves had already been born. They were sold with their mothers as pairs. For the 67 pairs, Cook received $87,785.00, which is an average of $1,310.22 per pair. There were 132 pregnant cows, which sold for a total of $143,150.00, or an average of $1,084.47. There were also 40 "open" cows, meaning they were not pregnant. They sold for $22,769.38, which is an average of $569.23 each. One sick calf was sold for $125.00.

[¶9.] Both parties had experts testify at trial regarding valuation of the calves. Bruce Naasz testified as an expert for Orr. He stated that an unborn calf has a value because "the cow is the factory and the calf is the product. The value of the cow is directly related to the value of the calf." After examining the sales sheets, Naasz used the cow and cow-calf pair sale prices to determine the value of just the calves, born and unborn. He subtracted the average value of an open cow from the average value of a cow-calf pair to determine the average value of the born calves ($1,310.22 – $569.23 = $740.99). To determine the average value of the unborn calves, he subtracted the average value of the open cow from the average value of the pregnant cow ($1,084.47 – $569.23 = $515.24).

[¶10.] Cook's expert, Frank Kralicek, Jr., testified that the value of a newborn calf was $125.00, based on the actual sale of a calf on March 29, 2007, for that amount and his personal experience in the cattle market. He disagreed with Naasz's valuation that a calf could be worth $740.99 because a calf would not actually be bought for that amount on the market. Kralicek testified that the cow of a cow-calf pair is the "big value" because buyers know that the cow has successfully been bred and likely could be again. He also disagreed that an unborn calf had any value. Kralicek again stated that it is the cow demonstrating that she can be bred that makes her worth more than an open cow.

[¶11.] On appeal, Cook concedes he owes Orr money for the 67 newly born calves, although they dispute the amount. Cook contends, however, that the unborn calves are not assets of the partnership, and he therefore does not have to pay Orr a portion of their sale amount. Under their oral agreement, Cook retained ownership of the cows and calves at all times, and then he paid Orr 60% of the sale proceeds from the calves. He argues that the 132 unborn calves were never sold because they were part of the cow and had no market value. Cook also asserts that Naasz's methodology is flawed because it "failed to utilize actual market sales or to test the market sale with his common sense."

[¶12.] Orr responds that Cook raises the issue whether the unborn calves were partnership assets for the first time on appeal. He argues that the parties stipulated that the unborn calves were partnership assets but disagreed on whether they had any value. Additionally, Orr defends the trial court's findings on the values of the born and unborn calves.

[¶13.] At the stipulation hearing, counsel for Cook stated that the agreement was to ask the court to "identify the value of the 2007 spring calves." The parties further clarified that they intended to present evidence as to the value of both born and unborn calves. The record does not indicate any discussion, argument, or evidence regarding whether the unborn calves were partnership assets. Rather, the evidence, testimony, and argument all relate to the *value* of the unborn calves, indicating that the court and parties were operating under the assumption that the unborn calves were partnership assets. We agree with Orr that the issue whether the unborn calves were partnership assets cannot be raised for the first time on appeal. *See NattyMac Capital LLC v. Pesek*, 2010 S.D. 51, ¶ 19, 784 N.W.2d 156, 161 (citing *Alvine Family Ltd. P'ship v. Hagemann*, 2010 S.D. 28, ¶ 21, 780 N.W.2d 507, 514 ("We have consistently held that this Court may not review theories argued for the first time on appeal.")). Consequently, we look to whether the trial court erred in determining the value of the born and unborn calves.

[¶14.] The trial court considered the expert opinions, then independently valued the property by adopting Naasz's valuation of the calves with some variation. The trial court rejected Naasz's attribution of the entire increased value of a pregnant cow to the unborn calf and similarly rejected the attribution of the entire increased value of a cow-calf pair to the calf. Instead, the trial court attributed 50% of the increased value of a cow-calf pair to the calf and 50% to the cow. Likewise, 50% of the increased value of a pregnant cow was attributed to the unborn calf and 50% attributed to the cow. Using this altered methodology, the trial court determined that the 67 calves were worth $370.50 each, for a total of

$24,823.50. The trial court then found that the 132 unborn calves were worth $257.62 each, for a total of $34,005.84. Orr was entitled to 60% of the total amount received for the calves, which was $14,894.10 for the 67 calves and $20,403.50 for the 132 unborn calves. Thus, Orr was awarded $35,297.60 for the calves.

[¶15.]        We have previously stated that "[w]e do not require exactitude in the trial court's valuation of assets; it is only necessary that the value lie within a reasonable range of figures. . . . [A] trial court is not required to accept either party's proposed valuation, but the value must be within the range of evidence presented to the court." *Johnson v. Johnson*, 2007 S.D. 56, ¶ 37, 734 N.W.2d 801, 810-11 (citing *DeVries v. DeVries*, 519 N.W.2d 73, 75-76 (S.D. 1994)). *See also Prairie Lakes Health Care Sys., Inc. v. Wookey*, 1998 S.D. 99, ¶ 10, 583 N.W.2d 405, 412 (holding that a trial court's independent valuation after considering the expert opinions was not clearly erroneous) (citing *ARC Machining & Plating, Inc. v. Dimmick*, 656 N.Y.S.2d 549, 550 (N.Y. App. Div. 1997) (stating that a trial court enjoys broad discretion to reject expert testimony and to determine value within the range of expert testimony or supported by other evidence and adequately explained by the court)). In this case, the trial court's finding on the value of the calves is within a reasonable range established by the experts.

[¶16.]        Furthermore, there is sufficient evidence in the record to support the trial court's finding on valuation of the calves. *See, e.g., Golden v. Oahe Enters., Inc.*, 319 N.W.2d 493, 494 (S.D. 1982). The values of the calves as found by the trial court are findings of fact that cannot be overturned unless they are clearly erroneous. *See Hubbard v. City of Pierre*, 2010 S.D. 55, ¶ 27, 784 N.W.2d 499, 511

("Because the circuit court's findings of fact are based on the evidence and not clearly erroneous, we decline to substitute our judgment as to the weight and credibility of the evidence[.]"); *Prairie Lakes Health Care Sys., Inc.* 1998 S.D. 99, ¶ 10, 583 N.W.2d at 412. Cook has not demonstrated that the findings are clearly erroneous, and the trial court is therefore affirmed on this issue.

[¶17.] **2. Whether the trial court was clearly erroneous in determining the amount of reimbursement Cook owed Orr for feed and veterinarian costs.**

[¶18.] Cook argues that the trial court was clearly erroneous in awarding Orr $6,128.62 for reimbursements when Orr testified he only wanted $5,979.17. Cook also argues the trial court was clearly erroneous in awarding reimbursements without a proper factual basis. Specifically, Cook questions the lack of receipts, incomplete invoices, and grain logs.

[¶19.] At trial, Orr presented a ration log he made detailing the amount of creep feed, mineral, grass, corn, silage, alfalfa, and pellets that he fed to the calves. Orr also presented various invoices substantiating the cost of most of the creep feed he fed the calves. The trial court found, however, that the costs not accounted for by invoices were still incurred and demonstrated in the ration log. The trial court also made specific findings on the veterinarian costs.

[¶20.] The trial court rejected Cook's arguments regarding specificity of the feed logs. Cook admitted that in previous years he had not received itemized feed statements from Orr. The court awarded Orr 40% of the creep feed, other feed, and veterinarian costs, totaling $6,316.96. Because Cook has not shown the trial court's findings regarding reimbursement are clearly erroneous, the trial court is affirmed.

[¶21.]    **3.    Whether the trial court erred in denying prejudgment interest and costs.**

[¶22.]    After judgment was entered, Orr requested taxation of disbursements on the total amount awarded to him.  The principal amount awarded was $41,614.56.  Based on the statutory interest rate of 10%, Orr calculated prejudgment interest and other fees totaling $14,456.47.  The trial court denied the motion because Orr "failed to request prejudgment interest in his complaint or at any time prior to entry of final judgment after trial in the present case.  The [c]ourt was not asked to award prejudgment interest prior to or as part of its final judgment, did not so award prejudgment interest, and made no specific findings of fact in relation thereto."

[¶23.]    Orr argues that the trial court erred in denying prejudgment interest and costs because he is entitled to it under SDCL 21-1-13.1, which provides in part:

> Any person who is entitled to recover damages . . . in the principal action . . . is entitled to recover interest thereon from the day that the loss or damage occurred[.]  If there is a question of fact as to when the loss or damage occurred, prejudgment interest shall commence on the date specified in the verdict or decision and shall run to, and include, the date of the verdict or, if there is no verdict, the date the judgment is entered. . . .  [I]f prejudgment interest is awarded, it shall be at the Category B rate of interest specified in § 54-3-16[.]

SDCL 54-3-16 provides that the Category B rate of interest is 10%.

[¶24.]    Cook argues that a party that fails to demand prejudgment interest before final judgment is prevented from recovering it later.  As support, Cook cites *Brown v. City of Yankton*, 434 N.W.2d 376 (S.D. 1989) and *American Property Services, Inc. v. Barringer*, 256 N.W.2d 887 (S.D. 1977).  Cook fails to note that

SDCL 21-1-13.1 was passed in 1990 and amended in 2003. *See* 1990 S.D. Sess. Laws ch. 156, § 1; 2003 S.D. Sess. Laws ch. 242, § 2. The controlling statute has been passed since *Brown* and *Barringer* were decided, and we therefore do not find Cook's sources persuasive on this issue.

[¶25.]     Cook further contends that the trial court's denial of prejudgment interest was appropriate because the last sentence of SDCL 21-1-13.1 states that "[t]he court shall compute and award the interest provided in this section and shall include such interest in the judgment in the same manner as it taxes costs." Cook argues that the trial court was never asked to compute the interest and never did so. In reading this sentence, however, Cook overlooks the language "the court *shall* compute and award the interest provided in this section and *shall* include such interest in the judgment in the same manner as it taxes cost." SDCL 21-1-13.1 (emphasis added). The trial court does not have the discretion to award prejudgment interest in this case – it is required.

[¶26.]     Although Orr requested prejudgment interest as part of his Application for Taxation of Disbursements and not as part of the judgment, the request was still proper under SDCL 15-6-54(d). SDCL 15-6-54(d) provides in part that "costs and disbursements . . . shall be allowed as of course to the prevailing party unless the court otherwise directs. If a party wishes to have disbursements and costs of the action assessed, that party must file an application for taxation of costs, and a certificate of service, with the clerk of court." In this case, the prejudgment interest is a disbursement allowed under SDCL 21-1-13.1. The trial court is reversed on this issue.

**CONCLUSION**

[¶27.]     Cook has not established that the trial court was clearly erroneous in valuing the calves or determining the reimbursement Cook owed Orr for feed and veterinarian costs.  The court is affirmed on these issues.  The trial court did err in refusing to award prejudgment interest because it was requested in a manner allowed by statute.  The trial court is reversed on this issue.

[¶28.]     KONENKAMP, ZINTER, and SEVERSON, Justices, and MEIERHENRY, Retired Justice, concur.